# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

JOHN C. WILKERSON,

    Plaintiff,

v.

HOMER BRYSON; STANLEY WILLIAMS; CURTIS WHITFIELD; SHEVONDA FIELDS; and DAVID COHER,

    Defendants.

CIVIL ACTION NO.: 6:16-cv-4

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Hancock State Prison in Sparta, Georgia, submitted a Complaint in the above-captioned action pursuant to 42 U.S.C. § 1983, complaining of conditions of his confinement during his incarceration at Smith State Prison in Glennville, Georgia. (Doc. 1.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims.[1] Additionally, the Court should **DENY** Plaintiff leave to appeal *in forma pauperis*.

---

[1] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A Magistrate Judge's Report and Recommendation ("R&R") provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that R&R served as notice that claims would be *sua sponte* dismissed). This Report and Recommendation constitutes fair notice to Plaintiff that his suit is barred and due to be dismissed. As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the District Court will review *de novo* properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562-TWT-JFK, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's report and

## BACKGROUND[2]

Plaintiff alleges that on May 1, 2012, while he was housed at Smith State Prison, Defendant Curtis Whitfield, a CERT Team Officer at the Prison, used excessive force against him. (Id. at p. 5.) On that date, Defendant Whitfield directed Plaintiff to close the tray flap on Plaintiff's cell, and Plaintiff refused. Id. Whitfield then emptied a small can of a chemical agent onto Plaintiff's face and upper body. Id. Undeterred, Plaintiff kept his arm protruding through the open tray flap. Id. Officer Whitfield then struggled to close the tray flap, but Plaintiff successfully resisted his efforts. (Doc. 1-1.) Whitfield then attempted to strike Plaintiff's arm with his baton. Id. However, Plaintiff managed to evade the full force of the blow by retracting his arm. Id. Another officer was then able to close the tray flap. Id. Plaintiff contends that Defendant Whitfield violated the Prison's Standard Operating Procedure by not videotaping the incident. Id.

Plaintiff also includes some claims in his Complaint regarding disciplinary reports against him. (Doc. 1, p. 5.) These claims are difficult to decipher. However, it appears that Plaintiff complains that prison officials have issued disciplinary reports against him on forms that are out-of-date and incomplete. Id.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which

---

recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

[2] The Court takes the following facts from Plaintiff's Complaint and construes them as true, as it must at this stage.

shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also

"accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I. Dismissal of Official Capacity Claims

Plaintiff cannot sustain Section 1983 claims for monetary relief against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections. Accordingly, the

4

Eleventh Amendment immunizes Defendants from suit in their official capacity. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacity; therefore, the Court should **DISMISS** all official capacity claims.

## II.     Dismissal of Claims Against Defendants Bryson and Williams

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior.[3]  Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears Plaintiff sues Homer Bryson, the Commissioner of the Georgia Department of Corrections, and Stanley Williams, the former Warden at Smith State Prison, based solely on their supervisory positions. Plaintiff makes no mention of either of these Defendants in his statement of claim. (Doc. 1, p. 5; Doc. 1-1) As set forth above, such supervisory positions are an insufficient basis for Section 1983 liability. Plaintiff has not established that Defendants

---

[3] The principle that respondeat superior is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipal, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129–30 (11th Cir. 1992).

Bryson and Williams had any personal involvement in the alleged violation of his constitutional rights or that there is any causal connection between their conduct and the violation. Therefore, the Court should **DISMISS** all claims against Defendants Bryson and Williams.

### III. Dismissal of Claims Against Defendants Fields and Coher

The only allegations that Plaintiff makes against Shevonda Fields and David Coher pertain to Plaintiff's grievance. (Doc. 1-1.) He contends that he filed a grievance on May 29, 2012, and "followed through all the way to internal affairs." Id. He claims that Fields was the manager of internal affairs and that Coher was the director of internal affairs. Id. Both of these Defendants wrote Plaintiff and told him that his grievance was still being investigated. Id. According to Plaintiff, this was a falsehood, as these Defendants ignored his grievance. Id. He states he has still not received any further response regarding his grievance. Id.

Alleged transgressions involving grievance procedures do not give rise to stand-alone claims under Section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam); see also Baker v. Rexroad, 159 F. App'x 61 (11th Cir. 2005) (finding that inmates neither have a liberty interest in an investigation based upon their inmate grievance, nor a liberty interest in the inmate grievance system). Further, "[t]here is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz v. Campbell, 64 F. Supp. 2d 721, 731 (W.D. Tenn. 1999). Plaintiff complains that Fields and Coher failed to follow the Department of Corrections' Standard Operating Procedure when handling his grievance. (Doc. 1-1.) However, "[f]ailure to follow a state-created grievance procedure does not rise to the level of a constitutional violation to be redressed in a § 1983 action." Jones v. Schofield, No. 1:08-CV-7

WLS, 2009 WL 902154, at *3 (M.D. Ga. Mar. 30, 2009) (citing Thomas v. Warner, 237 Fed. Appx. 435, 437–38 (11th Cir. 2007)).

Plaintiff's claims against Defendants Fields and Coher regarding their alleged disregard of the grievance procedures do not state a cognizable claim under Section 1983. Consequently, the Court should **DISMISS** all claims against Defendants Fields and Coher.

**IV.     Dismissal of Claims Against Defendant Whitfield**

    **A.     Dismissal due to Untimeliness**

Constitutional claims brought pursuant to Section 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011). In states where more than one statute of limitations exists, the forum state's general or residual personal injury statute of limitations applies to all § 1983 actions filed in federal court in that state. Owens v. Okure, 488 U.S. 235, 236, 249–50 (1989). Georgia has a two-year statute of limitations for personal injury actions. O.C.G.A. § 9-3-33.

Although state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run." Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003). As a general rule, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id. Additionally, "[t]o dismiss a prisoner's complaint as time-barred prior to service, it must appear beyond a doubt from the complaint itself that the prisoner can prove no set of facts which would avoid a statute of limitations bar.'" Moore v. Chamberlain, 559 F. App'x 969, 970 (11th Cir. 2014) (citing Hughes v. Lott, 350 F.3d 1157, 1163 (11th Cir. 2003)).

Plaintiff signed his Complaint on December 31, 2015, and it was filed in this Court on January 12, 2015. (Doc. 1, p. 7.) Thus, given the two-year limitation period, the operative date for assessing the timeliness of Plaintiff's Complaint is December 31, 2013. Any claims that accrued before December 31, 2013 (or for which the statute of limitations was not tolled until at least that date), are untimely. Plaintiff was aware of the facts giving rise to his claims against Defendant Whitfield on May 1, 2012, the date that Whitfield allegedly used excessive force against him. (Id. at p. 5.). Of course, this is well before the operative date of December 31, 2013. Thus, on its face, Plaintiff's claims are untimely.

Plaintiff filed a grievance, which could serve to toll the statute of limitations period. "As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." Lozano v. Montoya Alvarez, ___ U.S. ___, 134 S. Ct. 1224, 1231–32 (Mar. 5, 2014). The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all available administrative remedies before filing suit. 42 U.S.C. § 1997e(a). In Leal v. Georgia Department of Corrections, 254 F.3d 1276, 1280 (11th Cir. 2001), the Eleventh Circuit Court of Appeals "decline[d] to decide in the first instance the legal issue of whether the mandatory exhaustion requirement of 42 U.S.C. § 1997e(a) and the actual exhaustion of remedies by a prisoner will operate to toll the statute of limitations." Georgia law does not permit tolling, and the Eleventh Circuit has not addressed this issue directly. Walker, 196 F. App'x at 777 (stating in a Bivens case that court has "declined to decide whether the statute of limitations is tolled in a § 1983 case while a petitioner is pursuing administrative remedies."). However, I conclude, as have several Courts of Appeals, that tolling should apply. Nickolich v. Rowe, 299 F. App'x 725, 725–26 (9th Cir. 2008) (finding that, given California's two-year statute of limitations, a state

prisoner's Section 1983 deliberate indifference claim was not barred by the statute of limitations, where the inmate commenced his prison grievance process immediately after his claim accrued and filed a complaint within two years of completing the mandatory grievance process); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001) (holding that a federal court relying on the Illinois' statute of limitations in a Section 1983 case must toll the limitations period while a prisoner completes the administrative grievance process); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000) (concluding that tolling is appropriate while prisoner completes mandatory exhaustion requirements); Harris v. Hegmann, 198 F.3d 153, 157–59 (5th Cir. 1999) (same); see also Quilling v. Humphries, No. 4:10cv404-WS, 2010 WL 4783031, at *1 (N.D. Fla. Nov. 17, 2010) (referring a case back to the magistrate judge because it could not be determined that the statute of limitations necessarily barred the plaintiff's claims); and Baldwin v. Benjamin, No. 5:09-CV-372(CAR), 2010 WL 1654937 (M.D. Ga. Apr. 23, 2010) (recognizing that the Eleventh Circuit has not adopted a rule regarding the effect of exhaustion on tolling but noting that the exhaustion requirement may operate to toll the statute of limitations). Accordingly, the applicable statute of limitations period was tolled while Plaintiff pursued his administrative remedies, which was a prerequisite to filing suit because he was imprisoned at the time giving rise to his Complaint.

Nonetheless, there is nothing before the Court which indicates that the exhaustion of Plaintiff's administrative remedies took until December 31, 2013, to render this cause of action timely filed. Hughes, 350 F.3d at 1163 ("[Plaintiff], unlike Leal, has pointed us to no particular reason why the statute of limitations might be tolled in his case, and we can discern none from the record."). Because the incident giving rise to Plaintiff's claims occurred on May 1, 2012, the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05–0001, which was effective until December 10, 2012, provided the proper framework for Plaintiff's grievance

9

procedure. See Henderson v. Williams, No. CV613-008, 2013 WL 3874951, at *3 n.3 (S.D. Ga. July 25, 2013) (citing former SOP IIB05–0001). This Court has explained the following timing elements of that former SOP:

> The previous version of Standard Operating Procedure ("SOP") IIB05–0001 set forth the three (3) steps an inmate must complete under the Georgia Department of Corrections' grievance procedure. First, an inmate had to file an informal grievance "no later than 10 calendar days from the date" the inmate was aware "of the facts giving rise to the grievance." An inmate was to be given a written response to his informal grievance within ten (10) calendar days of the counselor's receipt of the inmate's informal grievance. If the inmate was dissatisfied with the resolution of his informal grievance, he had to file a formal grievance within five (5) days of his receipt of the written resolution of his informal grievance. The Warden had thirty (30) days to respond. Once an inmate received the Warden's response to his formal grievance and was dissatisfied with that response, he had five (5) business days to file an appeal with the Commissioner. The Commissioner's Office had 90 calendar days after receipt of the appeal to respond. (Case No. CV612–88, Doc. No. 46).

Id.

As noted above, Plaintiff states that he wrote a grievance on May 29, 2012. (Doc. 1-1.) That grievance was then referred to internal affairs. Though Plaintiff states he communicated with internal affairs regarding his grievance, he does not indicate that he filed an appeal of that referral to the Commissioner's Office. Even if he had followed all of the procedures of former SOP IIB05–0001, given the timing requirements set forth above, his grievance process would have been completed by October 16, 2012. This is three years, fifteen months, and two days before Plaintiff filed this cause of action, well outside the statute of limitations.

While Plaintiff contends that he has still not received a sufficient response to his grievance, this does not mean that the statute of limitations was tolled in perpetuity. Plaintiff did not have to receive a response from the warden to pursue further remedies. Former SOP IIB 05–0001 provided that, once the time limit for the warden to respond to the formal grievance

expired, the inmate could appeal the warden's inactivity to the Office of the Commissioner.[4] This is true even when the grievance was forwarded to internal affairs. See Battle, No. 5:05CV433 WDO, 2007 WL 988618, at *1. Moreover, if Plaintiff did file an appeal regarding his grievance, regardless of whether the Commissioner responded, once the time period for the Commissioner to respond expired, Plaintiff had exhausted his administrative remedies, and he was able to bring suit. Doyle v. Clark, No. CV 308-072, 2009 WL 4640650, at *5 (S.D. Ga. Dec. 7, 2009) (concluding that plaintiff exhausted his administrative remedies where the Commissioner did not respond to the appeal within 90-days as required by the standard operating procedure) (citing Callaway v. McRae, Civil Case No. 507-473, 2008 WL 3200728, at *4 (M. D. Ga. Aug. 5, 2008)). In other words, as long as Plaintiff filed the appropriate grievances and appeal and waited the appropriate time periods without a response, he did not have to receive an actual response from prison officials to file suit. Of course, once Plaintiff could bring suit, any equitable tolling stopped because there were no longer "extraordinary circumstance prevent[ing] him from bringing a timely action." Lozano, ___ U.S. ___, 134 S. Ct. at 1231–32.

For these reasons, the statute of limitations on Plaintiff's claims had long expired prior to Plaintiff filing this lawsuit. It appears beyond a doubt from the Complaint itself that Plaintiff can

---

[4] Plaintiff's apparent failure to file such an appeal provides yet another ground for dismissal of his Complaint. "To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)). Accordingly, in order to have properly exhausted, Plaintiff must have filed an appeal with the Commissioner when he did not receive the response he desired from the Warden. Bettencourt v. Owens, 542 F. App'x 730, 734 (11th Cir. 2013) ("Despite [the plaintiff's] protestations to the contrary, when the warden failed to respond to the formal grievance within the allotted thirty-day period [the plaintiff] was required to pursue an appeal in order to exhaust his claim."); Milton v. Fleckenstein, No. 6:10-CV-377, 2011 WL 208310, at *1 (M.D. Fla. Jan. 21, 2011) ("although Plaintiff never received responses to his formal grievances, grievances must be pursued through to the final level, even where no response is received."). Consequently, Plaintiff's failure to have exhausted his administrative remedies bars this action. Battle v. Hall, No. 5:05CV433 WDO, 2007 WL 988618, at *1 (M.D. Ga. Mar. 29, 2007) *aff'd*, 240 F. Appx 353 (11th Cir. 2007) (dismissing inmate's complaint because he failed to file appeal to Commissioner's Office after grievance was forwarded to internal affairs).

prove no set of facts which would avoid a statute of limitations bar. Consequently, the Court should **DISMISS** this action.

### B. Dismissal Due to Failure to State a Claim of Unconstitutional Force

Moreover, even if Plaintiff's allegations against Whitfield were timely, they fail to state a viable Section 1983 claim. In order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty.

12

Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Even accepting all of the allegations in Plaintiff's Complaint as true and construing them in his favor, he has failed to plausibly allege that Defendant Whitfield's use of force violated the Eighth Amendment. Plaintiff admits that he created the need for force by disobeying Officer Whitfield's directive to close the tray flap and putting his arm through the flap. (Doc. 1, p. 5.) Then, when Officer Whitfield attempted to close the flap, Plaintiff struggled against him. (Doc. 1-1.) Officer Whitfield's use of force was minor and proportional to the need to secure the tray flap. Moreover, as discussed in depth in Section V below, Plaintiff's own allegations reveal that any injury he suffered was *de minimis*.

Plaintiff takes issue with the fact that the use of force incident was not videotaped. However, even if Whitfield violated prison policy in this regard, that violation does not create a constitutional claim. Pearson v. Taylor, No. 7:13-CV-26 HL, 2014 WL 2465533, at *5 (M. D. Ga. May 30, 2014) ("Although the Plaintiff contends that the Defendants violated Department of Corrections policy in failing to video the entire use of force incident, an allegation of non-compliance with prison regulations, without more, is not sufficient to state a claim for relief under § 1983.").

All of these reasons should compel the Court to **DISMISS** Plaintiff's claims against Defendant Whitfield.

## V. Dismissal of All Claims for Lack of Physical Injury

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the

13

number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976–79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532.

In Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit stated that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated. Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a *de minim[i]s* physical injury." Id. (internal citations omitted) (alterations in original). Consequently, a prisoner that has not suffered more than *de minimis* physical injury cannot recover compensatory or punitive damages. Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiffs failed to meet § 1997e(e)'s physical injury requirement."); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) ("Plaintiff seeks nominal, compensatory, and punitive damages. It is clear from our case law, however, that the latter two types of damages are precluded under the PLRA."), *abrogated on other grounds by* Sossamon v. Texas, 563 U.S. 277 (2011). "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312–13 (11th Cir. 2002). "The meaning of the

phrase 'greater than *de minimis*,' however, is far from clear." Chatham v. Adcock, 334 F. App'x 281, 284 (11th Cir. 2009).

In this case, Plaintiff has only alleged *de minimis* physical injury resulting from Defendant Whitfield's use of force. Plaintiff claims that Defendant Whitfield sprayed him with a chemical agent. However, he does not state that the spray caused him any injury whatsoever. Furthermore, even if Plaintiff had described the typical effects associated with pepper spray, such as temporary burning of the skin and difficulty breathing, several courts have held that such conditions do not satisfy Section 1997(e)'s physical injury requirement. See, e.g., Jennings v. Mitchell, 93 F. App'x 723, 725 (6th Cir. 2004) (finding that prisoner who suffered the discomfort of pepper spray had shown only *de minimis* injury, which is insufficient to satisfy Section 1997e(e)); Kirkland v. Everglades Corr. Inst., No. 12-22302-CIV, 2014 WL 1333212, at *6 (S.D. Fla. Mar. 31, 2014) ("If [plaintiff] experienced temporary chemical burns and minor respiratory problems from exposure to a chemical agent, he then sustained only minor, physical injuries from the chemical spray."); Gardner v. Cty. of Baldwin, No. CIV.A. 12-0281-CG-C, 2014 WL 171839, at *13 (S.D. Ala. Jan. 15, 2014) ("[P]laintiff's injuries appear to be the typical physical response to being sprayed with pepper spray."); Thompson v. Quinn, No. 3:11cv533/RV/EMT, 2013 WL 2151715, at *12 (N.D. Fla. May 16, 2013) (prisoner failed to show more than a *de minimis* physical injury resulting from officer's use of chemical agent where only allegation of physical injury was burning sensation on his body); Magwood v. Tucker, No. 3:12cv140/RV/CJK, 2012 WL 5944686, at *5 (N.D. Fla. Nov. 14, 2012) (prisoner failed to show more than a *de minimis* physical injury resulting from officer's use of chemical agent where he alleged he suffered bloody nose and bloody phlegm); Robinson v. Tifft, No. 3:11cv560/LAC/CJK, 2012 WL 2675467, at *2 (N.D. Fla. June 1, 2012) (prisoner failed to show

15

more than a *de minimis* physical injury resulting from officer's use of chemical agent where he alleged he suffered "involuntary closing and burning sensation" in his eyes and was temporarily blinded); Kornagay v. Burt, No. 3:09cv281/LAC/EMT, 2011 WL 839496 (N.D. Fla. Feb. 8, 2011) (prisoner failed to show more than a *de minimis* physical injury resulting from officer's use of chemical agent where prisoner alleged he suffered burning lungs and skin, congested breathing, tearing eyes, nasal discharge, dizziness, the sensation of respiratory distress, choking, and burns to his scalp); Beecher v. Jones, No. 3:08cv416/MCR/EMT, 2010 WL 5058555, at *5 –6 (N.D. Fla. Oct. 29, 2010) (prisoner who alleged no physical injury arising from use of chemical agents failed to show requisite physical injury under § 1997e(e)); see also Quinlan v. Personal Trans. Servs. Co., 329 F. App'x 246, 249 (11th Cir. 2009) (unpublished) (pretrial detainee's complaints of a headache for several hours after being denied use of his asthma inhaler, difficulty breathing, temporary chest pain, and lingering back pain that caused him to walk hunched over, which resulted from him being transported in a smoked-filled van while handcuffed, were not greater than *de minimis* and therefore did not provide the necessary physical injury to recover for mental and emotional injuries).

Plaintiff also alleges that Whitfield attempted to strike Plaintiff's hand with a baton when Plaintiff was resisting the closing of his tray flap. (Doc. 1, p. 5.) However, Plaintiff "managed not to receive the full force of the blow." (Doc. 1-1.) Plaintiff does not allege that he received any injury from the baton. Even if he received some pain from the blow, courts have repeatedly found that such minor discomforts do not cross Section1997e(e)'s *de minimis* threshold. See, e.g., Dixon v. Toole, 225 F. App'x 797, 799 (11th Cir. 2007) ("mere bruising from the application of restraints is only a *de minimis* injury."); Nolin v. Isbell, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (bruises received during an arrest were non-actionable *de minimis* injury);

Mosley v. Medlin, No. CV 313-086, 2015 WL 106230, at *3 (S.D. Ga. Jan. 7, 2015) ("In this case, Plaintiff alleges only a contusion that was healed by the time he was transferred to another facility. Accordingly, Plaintiff's "physical injury" may not be considered greater than *de minimis*."); see also Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 557 n.3 (11th Cir. 2014) (describing an approach of asking whether the injury would require a free world person to visit an emergency room or doctor) (citing Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997) ("A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks.")).

In this case, Plaintiff does not describe any lasting effects of the incident with Whitfield, and he does not indicate that he required any medical treatment. Indeed, he does not allege that any of the Defendants' actions caused more than a *de minimis* injury. This failure provides yet further support for dismissal of his claims.

## VI.     Dismissal of Claims Related to Disciplinary Reports

In his statement of claim, Plaintiff alleges that he has received over forty disciplinary reports and that these reports have been written on an outdated form. (Doc. 1, p. 5.) It is not clear if Plaintiff attempts to assert a Constitutional claim regarding these reports. To the extent that he does, that effort is unavailing. As an initial matter, Plaintiff does not sufficiently allege that any of the Defendants had any involvement in his disciplinary proceedings. Moreover, Section 1983 "does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right." Knight v. Jacobson, 300 F.3d 1272, 1275 (11th Cir .2002). Consequently, the mere violation of a Department of Corrections' operating procedure does not give rise to a Section 1983 claim. Sandin v. Conner, 515 U.S. 472,

481–82 (1995) (regulations do not create constitutional rights or liberty interests); Smith v. Georgia, 684 F.2d 729, 733 n.6 (11th Cir. 1982) ("[N]ot every violation by a state agency of its own rules rises to the level of a due process infringement."); Rienholtz, 64 F. Supp. 2d at 731 ("In a § 1983 action, a federal court considers whether a constitutional right has been infringed, not whether bureaucratic procedures have been violated.").

However, an inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Shaarbay v. Palm Beach Cty. Jail, 350 F. App'x 359, 361 (11th Cir. 2009) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, (1974). Rather, "a disciplinary proceeding, whose outcome will 'impose[ ] atypical and significant hardship on the inmate' must ensure the following due process rights: (1) advance written notice of the claimed violation, (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence in his defense." Asad v. Crosby, 158 F. App'x 166, 173 (11th Cir. 2005) (citing Wolff, 418 U.S. at 563–67). Plaintiff has not alleged any facts that would lead to the conclusion that the outcome of his disciplinary proceedings imposed an atypical or significant hardship. Further, the mere use of an outdated form during the proceeding does not violate the Constitution.

Consequently, to the extent that Plaintiff asserts a claim regarding his disciplinary reports, the Court should **DISMISS** those claims.

## VII. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[5] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not take in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should be **DENIED**.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **DISMISS** this action for failure to state a claim and **DENY** Plaintiff leave to appeal *in forma pauperis*.

---

[5] A certificate of appealability is not required in this Section 1983 action.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 29th day of February, 2016.

_R. Stan Baker_
_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA